IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ELIAS ALAYA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil No. 1:19-cv-0888-TSE-MSN |
| ) | |
| QUINN'S 1776, LLC *et al.*, ) | |
| Defendants. ) | |
| ) | |

**REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiff Elias Alaya's motion for default judgment (Dkt. No. 21). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

**I.  Procedural Background**

On July 5, 2019, plaintiff brought an action against defendants for violations of the Fair Labor Standards Act (FLSA) and state law (Dkt. No. 1). On July 5, 2019, plaintiff filed proposed summonses as to all three defendants, which were issued that same day. (Dkt. No. 5). On September 10, 2019, defendant Quinn's 1776, LLC ("Quinn's") was properly served. (Dkt. No. 7). Quinn's failed to respond, and on October 3, 2019, the Clerk of the Court entered default as to Quinn's. On October 12, 2019, defendant Jody Hessler was properly served. (Dkt. No. 14). On October 15, 2019, plaintiff requested additional time to serve the remaining defendants in the case. (Dkt. No. 11). Plaintiff stated that Hessler had been served but was still awaiting the receipt of the affidavit from the process server, and that plaintiff had not yet been able to locate defendant Gardner despite diligent efforts. *Id.*[1] On October 16, 2019, the court granted this motion. (Dkt. No. 13).

---

[1] Plaintiff asserts that Defendants refused to execute the waiver of service requests sent to them, requiring costly personal service on the difficult to locate Defendants. (Dkt. No. 24) 2.

Subsequently, the Court received executed summonses demonstrating that both defendants Hessler and Gardner had been properly served. (Dkt. Nos. 14 and 15). Both of these defendants failed to respond.[2] On November 12, 2019, the Clerk entered default with respect to defendant Hessler. (Dkt. No. 17). On November 22, the Clerk entered default with respect to defendant Gardner. (Dkt. No. 20). On December 6, 2019, plaintiff filed a motion for default judgment as to all defendants. (Dkt. No. 21). On December 20, 2019, counsel for plaintiff appeared at the hearing on the motion for default judgment before the undersigned Magistrate Judge, and the matter was uncontested. (Dkt. No. 23). At the request of the Court, submitted additional briefing on the issue of fees and costs, along with a Notice of Supplemental Authority Regarding Attorneys' Fees. (Dkt. Nos. 24 and 25).

The complaint alleges three counts against defendants. Compl. (Dkt. No. 1) ¶ 1. Plaintiff alleges that defendants did not pay him at the overtime rate for overtime work performed and, for a brief period of time, paid him less than the minimum wage. In addition to the claim for unpaid overtime (Count 2), the complaint alleges a violation of the minimum wage provisions of Virginia and federal law (Counts 1 and 3). Plaintiff has now abandoned his claims for failure to pay minimum wage due to the lack of available records.

## II. Factual Background

The following facts are established by plaintiff's complaint (Dkt. No. 1) as well as by its memorandum in support of its motion for default judgment (Dkt. No. 21-1).

Plaintiff Elias Ayala was employed by defendants from approximately early 2017 to approximately January 13, 2019. Plaintiff's main duties were as a waiters' assistant, busboy, and janitor at Quinn's on the Corner, the restaurant and bar owned and managed by

---

[2] Despite defendants' failure to respond in this action, defendants have had substantial contact with plaintiff's counsel. For example, a consultant to Quinn's provided plaintiff's counsel with time sheets showing some of plaintiff's hours worked. (Dkt. No. 21-1) 6. There also appears to have been some communication regarding potential settlement of this matter.

defendants. Defendant Quinn's 1776, LLC owns and operates this establishment, which is located at 1776 Wilson Boulevard in Arlington, Virginia. Defendant Reese Gardner was a principal owner and active manager of Quinn's and at the times relevant to the complaint oversaw Alaya's work. Gardner was directly involved in personnel decisions at Quinn's, including terminating employees with whom he was dissatisfied. Defendant Jody Hessler was at times relevant to the complaint operations manager and an active participant of the management of Quinn's. Hessler knew of plaintiff's work schedule and supervised plaintiff. Toward the end of plaintiff's employment, Hessler was in effect acting as general manager of Quinn's.

The facts of this case are fairly straightforward. Defendants paid plaintiff under the minimum wage of $7.25 during his employment. For the initial period of plaintiff's employment his rate of pay was $5.50 per hour. Defendants later increased this rate, but, because plaintiff regularly actually worked far more hours than the hours for which he was paid, his actual hourly wage for many or all of the hours worked was less than $7.25 per hour. No exception to the minimum wage requirement allowed plaintiff to be paid at less than the minimum wage.

Furthermore, plaintiff regularly worked far more than forty hours in a workweek during his employment with defendants. Defendants failed to pay plaintiff at a time-and-a-half rate for all or nearly all the work he performed in excess of forty hours in a workweek, as is required by law.

### III.    Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, since this case includes a claim that arises under federal law. This Court has supplemental jurisdiction over the Virginia minimum wage claims because they are related state law claims under 28 U.S. Code § 1367. Since Quinn's is located in Arlington, a substantial portion

of the wrongful acts alleged in this Complaint occurred in the Eastern District of Virginia. Venue lies in this Court pursuant to 28 U.S.C. § 139.

## IV. Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the complaint are deemed to be admitted.

## V. Analysis

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the complaint (Dkt. No. 1), supported by plaintiff's motion for default judgment (Dkt. No. 21) and memorandum in support (Dkt. No. 21-1), establish that defendants violated the FLSA's overtime provisions. As noted above, plaintiff is not seeking damages for his minimum wage claims due to the lack of available records.

### a. FLSA Overtime Claim

First, the undersigned finds that defendants are liable for plaintiff's FLSA claim for overtime wages. The FLSA defines an "employer" to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). Here, defendant Quinn's, as the actual entity at which plaintiff was employed, easily meets the definition of an employer. *See Portillo v. King of Pita Bakery*, No. 1:12-cv-1103, (E.D. Va. June 19, 2013). Defendant Gardner, who is the principal owner of Quinn's, and who had the authority to hire and fire plaintiff, and defendant Hessler, who was the plaintiff's direct supervisor, also qualify as employers under the FLSA. *See, e.g., Chapman v. Ourisman Chevrolet Co.*, 2011 U.S. Dist. LEXIS 73708, *33 (D. Md. July 1, 2011) ("Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act and is subject to liability."). Therefore, since all defendants are employers of plaintiff as defined by the FLSA, and because defendants failed to pay him overtime for overtime hours worked, plaintiff has set forth facts sufficient to state a claim upon which relief can be granted.

### b. Calculation of Damages

Second, plaintiff's calculation of damages under the FLSA is correct. "Any employer who violates [29 U.S.C. §§ 206-07] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages," plus litigation expenses and reasonable attorney's fees. 29 U.S.C. §216(b). Double damages "are the norm," *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997), and the burden is on the employer to prove good faith. *See Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336 (4th Cir. 1994). Further, the FLSA requires the employer to

keep certain records of hours worked and wages paid. 29 U.S.C. § 211(c). Failure to do so is an independent FLSA violation. 29 U.S.C.§ 215(a)(5).

After defendant Quinn's received the complaint, a consultant to Quinn's provided plaintiff's counsel with time sheets showing plaintiff's work hours from January 1, 2018, through his last day in January, 2019, but provided no pay stubs or other contemporaneous evidence of payment, and no information relating to plaintiff's hours or payment for the year 2017. (Dkt. No. 21-1) 6. Plaintiff's counsel used the 2018 data to extrapolate what amount he worked in 2017, and applied the same wage rate he was paid for most of his time there, $7.50 per hour. *Id.*

The plaintiff attached a declaration to his motion for default detailing how this calculation was completed. (Dkt. No. 21-3). Using the information provided by defendants, plaintiff entered the hours worked each week in 2018 and 2019, determined how many of those hours were overtime hours, and applied the statutory overtime premium (one-half of plaintiff's hourly wage of $7.50) to the overtime hours worked but paid at the regular rate. *Id.* Because plaintiff believes that his hours worked in 2017 were similar to the hours worked in 2018 and 2019, plaintiff assumed the average amount of overtime worked in 2017 was the same and applied the overtime premium to those hours as well. *Id.* The undersigned is persuaded that this method of calculation is the best way to estimate damages under the circumstances of this case, wherein defendants failed to provide essential information, despite their burden under the FLSA to show good faith and keep and provide these records. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336 (4th Cir. 1994). The chart attached to plaintiff's declaration shows the total unpaid overtime wages to be $2,862.00. Liquidated damages, which are "the norm" in FLSA cases, bring the sum owed to plaintiff to $5,724.00. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997)

c.  **Attorney's Fees**

Upon instruction by the Court, the plaintiff submitted a supplemental affidavit in support of its petition for fees. Plaintiff's fee request is certainly unusual in that it asks for an amount far in excess of the modest recovery in this case. However, the undersigned sees no support in the caselaw for reducing a fee request simply because of a modest recovery, especially where an FLSA case is concerned.

"A presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522, 526 (2d Cir. 1991). This is because "[t]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994; *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation.").

Judges in this district have made it clear that in FLSA cases, it is sometimes appropriate for fees to exceed a recovery. *Benitez v. Braga Const. Co*., No. 1:11-CV-461, 2011 WL 5122686, at *1 (E.D. Va. Sept. 19, 2011) (Hilton, J.) (affirming 2011 WL 5122686 (E.D. Va. Sept. 19, 2011) (report and recommendation) (Awarding $9,092.50 in FLSA damages against a defendant who had defaulted, and awarding Plaintiff's attorneys' fees of $19,180 and costs of $423.96.) Order, No. 1:11-CV-461, Dkt. 19 at 4 (Oct 24, 2011).

Plaintiff's supplemental affidavit does provide some context for how this fairly large bill for fees and costs arose. This is a somewhat atypical default judgment case because, over the course of

7

nearly a year, plaintiff's counsel tried to work with defendants to resolve this matter without the need for litigation. (Dkt. No. 24) 1. This effort to save expense ended up taking substantial attorney time over the course of the next ten months. *Id*. at 3-4. Unfortunately, this effort failed due to, in plaintiff's view, defendants' bad faith. *Id*. at 1. Defendants failed to retain counsel, communicated intermittently with plaintiff, providing "dribs and drabs of requested information" stretched out over a period of months, and never provided many of the payroll records requested. *Id*. at 1-2. Defendants also failed to execute the waiver of service requests sent to them, requiring costly personal service on individuals who were difficult to locate. *Id.* at 11. And when defendants were ultimately personally served, they failed to appear in this action. *Id*.

Another consequence of the fact that plaintiff was in contact with the defendants in this action is that plaintiff's counsel conducted a fair amount of investigation of records and documents that would not occur in most default judgment cases. *Id*. at 2. Defendant provided certain pay and time-worked information that needed to be reviewed in detail by plaintiff's counsel. *Id.* This information was essential to determining plaintiff's damages but reviewing it was time consuming because much of the information produced was "confusing, incomplete and not in a readily usable format." *Id*.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court outlined a framework for federal courts making fee petition decisions. According to this decision "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. Billing for the services of paralegals or other legal assistants are also encompassed by this, and therefore are recoverable as, "attorney's fees." *See Missouri v. Jenkins*, 491 U.S. 274, 288-89 (1989) ("A reasonable attorney's fee" refers to an attorney's work product, and thus, must account for the work, not only of attorneys, but also the work of paralegals.).

In the Fourth Circuit, the reasonableness of the rate and hours is determined by reference to the factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). These factors are the time and labor expended; the novelty and difficulty of the questions raised; the skill required to perform the services rendered; the attorney's opportunity cost in pursuing the litigation; the customary fee for similar work, the attorney's expectations at the outset of litigation; the amount in controversy and result obtained; the experience, reputation, and ability of the attorney; the undesirability of the case; the nature and length of the professional relationship between attorney and client; and fees awards in similar cases. *Id.*

Plaintiff's attorneys and paralegal altogether billed 60.7 hours. (Dkt. No. 24-2) 4. While this is not an overly complicated case, plaintiff was required to expend significant effort due to the confusing and incomplete nature of the records. (Dkt. No. 24) 2. Plaintiff's attorneys also aver that they have busy practices and full caseloads, thus this case involved significant opportunity cost. *Id.* at 8.

On the question of the customary fee, plaintiff argues that under fee shifting statutes such as the FLSA the hourly rate is determined with reference to rates in the community where the action is litigated. (Dkt. No 24) at 8. Therefore, the rates applicable would be guided by the *Vienna Metro* matrix. Plaintiff's counsel Kaplan, with 16 years' experience, would fall into the range of $520 to $770 under the matrix. *Id.* Plaintiff's counsel Garon, with four decades of experience, would fall into the range of $505 - $820 specified under the matrix. *Id.* Kaplan has asked for a rate of $495 an hour, and Garon has asked for a rate of $460 an hour. *Id.* Therefore, both of these attorneys are billing at rates lower than the range provided in the matrix. In addition, this case was accepted entirely on a contingency basis. *Id.* at 9. Therefore, the Court's award of fees, to the extent it is even recoverable from defendants, will represent the totality of counsel's fees.

9

On the question of results obtained, should the Court affirm plaintiff's claim, plaintiff will have obtained nearly all of his potential damages. *Id.* Plaintiff's counsel also asserts that this was an undesirable case to take on because of the small amounts involved, plaintiff's lack of English proficiency, and the difficulties caused by defendants' failure to cooperate or enter an appearance, which may also indicate that collecting the entirety of the judgment may be difficult. *Id*. at 9-10.

Significantly, plaintiff's counsel has opted to cut its requested fee award by 20 percent. Under the calculations detailed in the affidavit, plaintiff would have been titled to $26,671.08. *Id.* at 10. Counsel have opted to reduce this to $21,336.86. *Id.* Accordingly, the undersigned finds that plaintiff should be awarded the total of this reduced request, along with costs, of $672.46.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting plaintiff's motion for default judgment (Dkt. No. 21);

2) Awarding plaintiff $5,724.00 for its FLSA overtime claim.

3) Awarding plaintiff $22,009.32 for attorney's fees and costs.

## VII. Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant domain names at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

March 3, 2020
Alexandria, Virginia